IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

---------------------------------------------------  :
JEFFREY SWIECICKI, et al.,                           :  CASE NO. 1:03 CV 2571
                                                     :
                                      Plaintiffs     :
                                                     :
              -vs-                                   :  MEMORANDUM OF OPINION AND
                                                     :  ORDER GRANTING DEFENDANT'S
                                                     :  MOTION FOR SUMMARY JUDGMENT IN
JOSE DELGADO,                                        :  PART AND REMANDING THE
                                                     :  REMAINING CLAIMS
                                      Defendant.     :
---------------------------------------------------  :

UNITED STATES DISTRICT JUDGE LESLEY WELLS


On 19 December 2003, Plaintiffs Jeffrey Swiecicki and Scott Swiecicki filed suit in

this court against Jose Delgado ("Officer Delgado"), alleging various constitutional

violations under 42 U.S.C. § 1983.[1]  Jeffrey Swiecicki and Scott Swiecicki both allege four

identical Section 1983 claims: they both contend Officer Delgado violated their

constitutional rights 1) to freedom of speech (count one), 2) freedom from seizure of

person, arrest, or imprisonment without probable case (count two), 3) freedom from

excessive force (count three), and 4) freedom from malicious prosecution (count four).

Before the Court is Officer Delgado's motion for summary judgment against all of

the plaintiff's claims.  (Docket #20).  An opposition and reply were filed.  (Docket #24 and

#25).  In his current motion, Officer Delgado incorporates his earlier partial motion for

---

[1]In their fifth cause of action, Plaintiffs also allege related state torts, including battery, assault,
false imprisonment, false arrest, and malicious prosecution.  (Compl. at ¶ 13).

summary judgment (Docket #15), and the Court has considered the Plaintiffs' earlier

opposition to the partial motion for summary judgment (Docket #16).

For the reasons set forth below, Officer Delgado's motion for summary judgment

will be granted as to all of the Plaintiffs' Section 1983 claims.  The remaining issues,

contained in count five, will be remanded to state court.


## I.  BACKGROUND[2]

On 25 September 2001, Plaintiffs Jeffrey Swiecicki and Scott Swiecicki were

seated in the outfield bleachers of Jacobs Field, a baseball stadium in Cleveland, Ohio,

attending a baseball game between the Cleveland Indians and the Toronto Blue Jays.

They were seated in a group of between fifteen and twenty people.  (Docket #19, at ¶ 11).

During the game, Jeffrey Swiecicki heckled the left fielders, both from the Indians and the

Blue Jays.  While approximately half of his group was heckling the players throughout the

game, Jeffrey Swiecicki admits to leading the heckling.  (Docket #22, at 127)[3].  Jeffrey

Swiecicki also admits to drinking two full beers with a group of his friends (Docket #22, at

126), but Scott Swiecicki denies drinking any beer at the game (Docket #22, at 145).

During the criminal proceedings, Officer Delgado testified that he observed Jeffrey

Swiecicki carrying beers back to his seat several times during the game; specifically, he

---

[2] In considering a motion for summary judgment, this Court must view the evidence in the light most favorable to the nonmovant, here, the plaintiff.  Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

[3] Docket #22 is the transcript of the criminal proceedings in City of Cleveland v. Jeffrey Swiecicki et al.

2

saw Jeffrey Swiecicki holding a beer when he yelled at Russell Branyan, the Cleveland

Indian's outfielder and third baseman.  (Docket #22, at 7-8).

At the time, Defendant Jose Delgado, a City of Cleveland police officer, was

working his authorized secondary employment as a security guard at Jacobs Field, and he

was stationed at a tunnel near the bleachers along with Wilfred Labrie, a host greeter.

While technically off-duty as a police officer, Officer Delgado was wearing his official City

of Cleveland police officer uniform and was armed with his official City of Cleveland police

weapons.  (Docket #19, at ¶ 12).

Sometime around the seventh inning, both Mr. Labrie and Officer Delgado heard

foul and abusive language coming from the bleachers.  (Docket #22, at 15-16, 22, and 41).

While Jeffrey Swiecicki admits to heckling the players, he denies using profanity at any

point during the game.  (Docket #22, at 23-25).  In contrast, Officer Delgado claims that he

heard someone call out, "Branyan, you suck.  Branyan, you have a fat ass,"  and he

identified Jeffrey Swiecicki as the speaker.  (Docket #22, at 6-7).  Officer Delgado also

claims that there were younger children in the bleachers; specifically, a ten-year-old girl

was sitting behind Jeffrey Swiecicki along with an older gentleman.  (Docket #22, at 7).

Jeffrey Swiecicki does not recall seeing any children sitting close by.  (Docket #22, at 128

and 138).

The owners of Jacobs Field prohibit fans from using abusive or foul language

during games, so Officer Delgado stood in front of the bleachers and motioned for Jeffrey

Swiecicki to "cut it out."  (Docket #22, at 6).  When Officer Delgado told Jeffrey Swiecicki

to cut it out, he claims that the older gentleman thanked him.  (Docket #22, at 7).

3

Apparently, Jeffrey Swiecicki did not see Officer Delgado's signal.  (Docket #22, at 139).

When Jeffrey Swiecicki seemed to be ignoring his command, Officer Delgado went up to

his row and asked Jeffrey Swiecicki to come with him.  (Docket #22, at 8).  At first, Jeffrey

Swiecicki did not comply; instead, he repeatedly asked Officer Delgado what he had done

wrong.  Officer Delgado said, "We can do this the easy way or we can do this the hard

way."  (Docket #22, at 148).  Jeffrey Swiecicki ultimately complied with the orders and

exited the row.  Once he did, Officer Delgado grabbed him in the "escort position," holding

him by one arm with both hands, and escorted him down into the tunnel with the intent of

ejecting him from the stadium.  (Docket #22, at 8).  As they were traveling through the

tunnel, Jeffrey Swiecicki continued to ask, "What have I done?"  (Docket #22, at 149).

While Officer Delgado was escorting Jeffrey Swiecicki into the tunnel, Jeffrey's

brother Scott Swiecicki along with companions Matthew Hlabac, Jason Kulwicki, and

Ralph Sapolla, followed them on foot.  (Docket #22, at 157).  Scott Swiecicki also asked,

"Officer, what has my brother done?"  (Docket #22, at 149).  At this time, Officer Delgado

claims that Jeffrey Swiecicki jerked, pushed his arm away and turned around to face him.

Then, Officer Delgado told Jeffrey Swiecicki that he was under arrest, turned him around,

pushed him against a concession stand door, and put his arms behind his back.  (Docket

#22, at 19).  At the criminal trial, Delgado admitted that he "was just going to escort him

[Jeffrey Swiecicki] out until he jerked away from my hold and pushed my arm away.  That's

when I said he was under arrest."  (Docket #22, at 18).  As he was about to put handcuffs

on Jeffrey Swiecicki, Officer Delgado claims that Scott Swiecicki approached him too

closely, yelling, and interfering with his safety.  (Docket #22, at 19 and 22).  When Officer

4

Delgado let go of one of Jeffrey Swiecicki's hands in order to stop Scott Swiecicki, Jeffrey Swiecicki again pushed his arm away and turned around to face him.  (Docket #22, at 20-21).

Officer Delgado claims that he felt unsafe given the situation and the small area, so he grabbed Jeffrey Swiecicki's shoulders and ordered him to the ground.  Officer Delgado told him to get down and stop resisting, but he claims that Jeffrey Swiecicki continued to resist, so Officer Delgado put him in an "arm bar," grabbing Jeffrey Swiecicki's left arm and twisting it to lock it into a bond.  Officer Delgado was then able to bring him down to the ground without resistance.  (Docket #22, at 21).

Jeffrey Swiecicki does not himself remember what happened, but he believes that Officer Delgado slammed him into the door because the Officer was tired of him asking what he had done wrong.  (Docket #22, at 130).  Jeffrey Swiecicki claims he never pulled his arm away from Officer Delgado's grasp.  (Docket #22, at 133).  In fact, he alleges that he fell to his knees because Officer Delgado had pushed him so hard against the door that he suffered an injury on the right side of his head.  (Docket #22, at 131).

As soon as Officer Delgado was able to handcuff Jeffrey Swiecicki, he radioed for backup.  Once backup arrived, he had the other officers arrest Scott Swiecicki.[4]  (Docket #22, at 11).  Next, the officers moved the Plaintiffs to a holding area in the basement of

---

[4]There is some dispute about the events leading up to Scott Swiecicki's arrest.  Officer Delgado claims that during the altercation he told Scott Swiecicki to stay back, but Scott Swiecicki continued to approach him in a threatening manner.  Scott Swiecicki claims he never heard such an order.  Also, while Officer Delgado claims Scott asked, "What the fuck are you doing?," Scott denies using any profanity.  (Docket #22, at 158).  Scott Swiecicki asserts he was not in Officer Delgado's personal space, and he did not hear the officer talking to him.  (Docket #22, at 160).

Jacobs Field and eventually escorted them to the Justice Center where they were both

charged with aggravated disorderly conduct pursuant to Cleveland Cod. Ord. § 605.03[5]

and resisting arrest pursuant to Cleveland Cod. Ord. § 615.08.  (Docket #22, at 152).  The

Cleveland Municipal Court found Jeffrey Swiecicki guilty of the lesser included offense of

disorderly conduct under Cleveland Cod. Ord. § 605.03 and resisting arrest; however, the

judge acquitted Scott Swiecicki of all charges.  (Docket #22, at 169-174).

Later, the Ohio Court of Appeals granted Jeffrey Swiecicki's motion for direct

acquittal and dismissed all criminal charges against him.  City of Cleveland v. Swiecicki,

149 Ohio App. 3d 77, 82 (2002).  The court held the evidence that Jeffrey Swiecicki

carried or held beers, and even the inference that he had been drinking, was insufficient to

establish proof of intoxication required for the charge of disorderly conduct.  Id. at 80.

Also, since Officer Delgado admitted to arresting Jeffrey Swiecicki because of the conduct

he committed while being escorted out of the stadium, not because of his belief that Jeffrey

Swiecicki had committed the crime of disorderly conduct, the arrest itself was unlawful.

Moreover, since the crime of resisting arrest requires a lawful arrest, the evidence was

insufficient to support a conviction of resisting arrest.  Id. at 82.

On 25 September 2002, Jeffrey Swiecicki and Scott Swiecicki, along with Lisa

Swiecicki, jointly filed a civil action for damages in the Court of Common Pleas of

Cuyahoga County, Ohio against Officer Delgado, the Cleveland Indians Baseball

Company, and other unknown defendants based on the same facts as the current federal

---

[5] Disorderly conduct is only a minor misdemeanor while aggravated disorderly conduct is a misdemeanor of the first degree.  One commits aggravated disorderly conduct when he or she persists in disorderly conduct after a reasonable warning or request to desist.

action.  In their state case, both Plaintiffs alleged identical intentional tort claims of assault,

battery, false imprisonment, and malicious prosecution.  On 28 July 2003, the Plaintiffs

voluntarily dismissed their state complaint without prejudice.


## II.  STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the evidence in the record shows there is no

genuine issue of material fact and the moving party is entitled to judgment as a matter of

law.  Fed. R. Civ. P. 56(c).  The moving party always bears the initial burden of

demonstrating the absence of a genuine issue of material fact.  Celotex v. Catrett, 477

U.S. 317, 323 (1986).  However, where the nonmoving party has the burden of proof in a

case, the moving party can satisfy its initial burden "by pointing out to the court that the

respondent, having had sufficient opportunity for discovery, has no evidence to support an

essential element of his or her case."  Betkerur v. Aultman Hosp. Ass'n, 78 F.3d 1079,

1087 (6th Cir. 1996).

If the motion is properly made and supported as provided in Rule 56(c), the

nonmoving party must then "go beyond the pleadings and by her own affidavits, or by the

'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts

showing that there is a genuine issue for trial.'"  Celotex, 477 U.S. at 324.  It is not enough

for the nonmoving party to point to any alleged factual dispute between the parties.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  To survive summary

judgment, the dispute must involve a genuine issue of material fact; that is, a fact that might

affect the outcome of the suit under the governing substantive law.  Anderson, 477 U.S. at

7

248 (noting that the "mere existence of a scintilla of evidence in support of the [nonmovant]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant].").

Summary judgment is intended as a mechanism for isolating and disposing of "factually unsupported claims or defenses." Celotex, 477 U.S. at 323-24.  To that end, the inquiry on summary judgment mirrors the directed verdict standard, and summary judgment should be entered when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (quoting Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). If the non-moving party bears the burden of proof at trial and fails to present "a jury question as to each element of its case," the motion for summary judgment must be granted. Hartsel v. Keys, 87 F.3d 795, 799 (6th Cir. 1996) (citing Celotex, 477 U.S. at 322-23). Given the focus of summary judgment on evaluating what a reasonable jury could find, courts may not consider hearsay evidence in reaching their conclusions.  Hartsel v. Keys, 87 F.3d at 799.  In considering a motion for summary judgment, the evidence must be viewed in the light most favorable to the party opposing the motion. Matsushita, 475 U.S. at 587.

### III.  LAW AND ANALYSIS

**A.  Statute of Limitations**

**1.  Two-Year Statute of Limitations on Section 1983 Claims**

Officer Delgado argues that all of the Plaintiffs' Section 1983 claims are barred by

8

the statute of limitations.[6]  He contends that the two-year statute of limitations for Section 1983 civil rights actions began to run on 25 September 2001 when the alleged violations occurred.  Since the Plaintiffs did not file their complaint until 19 December 2003, more than two years later, Officer Delgado argues their untimely filing bars defendants' claims.  In opposition, the Plaintiffs maintain the statute of limitations did not begin to run until Jeffrey Swiecicki's convictions were vacated on 8 August 2002, which would make the filing of the Plaintiffs' complaint timely.

Since Congress did not specifically adopt a statute of limitations governing Section 1983 actions, federal courts must borrow the statute of limitations governing personal injury in the state in which the Section 1983 claim is brought.  Wolfe v. Perry et al., 2005 U.S. App. LEXIS 12677, at *15-16 (6th Cir. June 27, 2005).  In Ohio, the appropriate statute of limitations for Section 1983 civil rights actions is two years under O.R.C. § 2305.10, Ohio's personal injury statute.  Banks v. City of Whitehall, 344 F. 3d 550, 553 (2003).  Under O.R.C. § 2305.10, the statute of limitations on a cause of action begins to run when a party discovers or should discover the existence of the cause of action.  "Just as a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor, so also a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated."  Heck v. Humphrey, 512 U.S. 477, 489-490 (1994) (citations omitted); Shamaeizadeh v. Cunigan, 182 F. 3d 391, 396 (6th Cir. 1999).

---

[6] Officer Delgado originally made this argument in his partial motion for summary judgment (Docket #15), and he has incorporated his partial motion for summary judgment in his current motion for summary judgment (Docket #20).

9

Because a claim for excessive force does not rely on the validity of a conviction, such a claim is immediately cognizable. Hodge v. City of Elyria, 126 Fed. Appx. 222, 223 (6th Cir. March 3, 2005) (unpublished). In other words, the statute of limitations on an excessive force claim begins to run when the plaintiff knew or should have known of the injury which forms the basis for his or her claims. Id. at 225.

### a. Jeffrey Swiecicki

Since Jeffrey Swiecicki's allegations of a free speech violation (count one), seizure, arrest, and imprisonment without cause (count two), and malicious prosecution (count four) all implicate the unlawfulness of Jeffrey Swiecicki's conviction, the statute of limitations on these counts did not begin to run until his conviction was reversed on 8 August 2002. Jeffrey Swiecicki filed his complaint on 19 December 2003, well within the two-year statute of limitations. As a result, counts one, two, and four as to Plaintiff Jeffrey Swiecicki were timely filed.

In count three, Jeffrey Swiecicki alleges a Section 1983 violation based on Officer Delgado's use of excessive force. According to the Sixth Circuit Court of Appeals in Hodge v. City of Elyria, a claim of excessive force does not relate to the validity of a criminal conviction, and so it is immediately cognizable. 126 Fed. Appx. at 223. Consequently, the two-year statute of limitations on count three began to run when the alleged excessive force was used on 25 September 2001 and stopped running on 25 September 2003. Jeffrey Swiecicki did not assert his excessive force claim until almost three months after the deadline, so, without the benefit of tolling, his excessive force claim will be dismissed as untimely filed.

10

### b. Scott Swiecicki

The Plaintiffs argue that Scott Swiecicki's claims were "inseparable" from those of Jeffrey Swiecicki, and so the statute of limitations on Scott Swiecicki's claims also did not begin to run until 8 August 2002.  Plaintiffs, however, cite no points of law in support of this argument, and it is ultimately unconvincing.  Scott Swiecicki's arrest was entirely separate from his brother's: he was arrested later in time by a different officer for different reasons than Jeffrey Swieckicki.  Moreover, the Cleveland Municipal Court dismissed Scott Swiecicki's charges at the conclusion of the criminal trial on 20 November 2001, long before Jeffrey Swiecicki's convictions were overturned by the Ohio Court of Appeals.  Although Jeffrey Swiecicki and Scott Swiecicki's criminal prosecutions and now civil claims were combined, their convictions are not inseparable for statute of limitations purposes.  Even if Shamaeizadeh applied to Scott Swiecicki's case, the statue of limitations on his claims would have begun to run when the criminal charges against him were dismissed on 20 November 2001.  He then would have had until 20 November 2003 to timely file any related Section 1983 claims.  Because Scott Swiecicki did not file his Section 1983 claims until nearly a month later on 19 December 2003, counts one, two, three, and four of his complaint will be dismissed as untimely filed unless the Ohio Savings Statute applies.

### 2. The Ohio Savings Statute (O.R.C. § 2305.19)

The Plaintiffs alternatively argue that, in the event this Court does not find the complaint was timely filed in accordance with O.R.C. § 2305.10, then the Court should consider their complaint, nevertheless, timely filed by virtue of O.R.C. § 2305.19, the Ohio

Savings Statute.  In <u>Hardin v. Smith</u>, the Supreme Court held that limitations periods in

Section 1983 suits should be determined by reference to the appropriate state statute of

limitations as well as the coordinate tolling rules.  490 U.S. 536, 539 (1989).  Accordingly,

the Sixth Circuit Court of Appeals has held that the Ohio Savings Statute applies to

Section 1983 civil rights claims.  <u>Harris v. Canton</u>, 725 F. 2d 371, 375 (1984).

      The Ohio Savings Statute allows a plaintiff to refile a cause of action within one year

of voluntary dismissal of the original action or if the plaintiff fails otherwise than on the

merits if four criteria are met: 1) the action was commenced or attempted to be

commenced within the applicable period of limitations, 2) the failure of the plaintiff in the

action was otherwise than upon the merits, 3) at the date of such failure, the time limit for

commencing the action had expired, and 4) the plaintiff refiled the action within one year of

such failure.  <u>Johnson v. Univ. Hosp. of Cleveland</u>, 26 Fed. Appx. 238, 243 (6th Cir. Aug.

22, 2002) (unpublished).  In <u>Johnson</u>, the court found that where the statute of limitations on

a cause of action had not yet run when the plaintiff voluntarily dismissed her case, she

could not benefit from the Ohio Savings Statute.  <u>Id.</u> at 243-244.  "If the dismissal comes

before the expiration, then the Savings Statute does not apply, and the plaintiff must refile

before the expiration of the original limitation period."  <u>Goings v. Lewisystems, Inc.</u>, 1999

U.S. App. LEXIS 13984, at *7 (6th Cir. June 17, 1999) (unpublished) (quoting <u>Griffin v.</u>

<u>American Med. Sys., Inc.</u>, 1997 U.S. App. LEXIS 622, at *6 (6th Cir. Jan. 7, 1997)

(unpublished)).

      In this case, Plaintiffs argue their voluntary dismissal of their state civil action on 28

July 2003 invoked the Ohio Savings Statute, which permitted them to refile their Section

1983 claims by 28 June 2004.  Officer Delgado, however, points out that the Plaintiffs'
dismissal of their state case on 28 July 2003 was within the original two-year statute of
limitations for their federal Section 1983 claims.  In other words, at the time Plaintiffs
voluntarily dismissed their state case, they still had time to refile their federal case within
the statute of limitations; therefore, O.R.C. § 2305.19 does not apply to the Plaintiffs'
claims.

### a. Jeffrey Swiecicki

The statute of limitations on Jeffrey Swiecicki's excessive force claim began to run
on 25 September 2001, and he had until 25 September 2003 to file his federal claim.
When he voluntarily dismissed his state civil action on 28 July 2003, Jeffrey Swiecicki still
had almost two months to file his federal civil action.  However, he did not file his federal
claims until 19 December 2003, long after the statute of limitations had expired.  As a
result, Jeffrey Swiecicki will not receive the benefit of the Ohio Savings Statute for his
excessive force claim, and count three of his complaint will be dismissed as untimely.

### b. Scott Swiecicki

Similarly, Scott Swiecicki had time to refile all of his federal civil causes of action
after the voluntary dismissal of his state case.  The statute of limitations on his four Section
1983 claims began to run on 20 November 2001, so he had until 20 November 2003 to file
his claims in federal court.  However, he did not do so until 19 December 2003, almost a
month after the deadline.  So, Scott Swiecicki, like his brother, will not receive the benefit
of the Ohio Savings Statute for any of his Section 1983 claims.

At the time that Jeffrey Swiecicki and Scott Swiecicki voluntarily dismissed their state civil suit against Officer Delgado, the statute of limitations on Jeffrey Swiecicki's federal claim for excessive force and all of Scott Swiecicki's federal claims had not yet run. As a result, the Ohio Savings Statute does not apply to either Jeffrey Swiecicki's excessive force claim or Scott Swiecicki's four Section 1983 claims. Since Jeffrey Swiecicki untimely filed his excessive force claim, count three of his complaint will be dismissed as untimely filed. Also, since all of Scott Swiecicki's federal claims were untimely filed, counts one, two, three, and four will be dismissed as to him.[7]

## B. Acting Under Color of Law

In his motion for summary judgment, Officer Deglado alleges that he was acting in a private capacity when he attempted to eject Jeffrey Swiecicki from Jacobs Field, insinuating that he was not acting under color of state law. (Docket #20, at 7). Plaintiffs point out the inconsistency of Officer Delgado arguing that he was acting as a private security guard at one moment and a police officer the next. (Docket #24, at 7-8).[8]

To state a Section 1983 claim, a plaintiff must allege the violation of a Constitutional right and show that the alleged violation was committed by a person acting under color of state law. Redding v. St. Edward, 241 F. 3d 530, 532 (6th Cir. 2001). Acting under color of state law requires that the defendant exercise power possessed by virtue of state law

---

[7] Since this Court has resolved the issue of the applicability of O.R.C. § 2305.19 to Jeffrey Swiecicki's excessive force claim and all of Scott Swiecicki's federal claims, it does not reach the issue of whether the instant action is "substantially the same" as the earlier state action as required by the Ohio Savings Statute.

[8] It is important to note, however, that inconsistent pleading is permitted under Fed. R. Civ. Pro. 8.

14

and made possible only because he or she is clothed with the authority of state law. <u>Id.</u> at

533. The nature of the act performed, not the clothing of the actor or even the status of

being on duty or off duty determines whether the officer has acted under color of law. <u>Id.</u>

In this case, Officer Delgado stipulated that on 25 September 2001 he was wearing

his official City of Cleveland police uniform and carrying his official City of Cleveland police

weapons. Although Officer Delgado may have been acting as a private actor when he

began escorting Jeffrey Swiecicki out of the stadium pursuant to the rules and regulations

of Jacobs Field, he asserted his official state power when he placed Jeffrey Swiecicki

under arrest. Therefore, this Court will only consider Jeffrey Swiecicki's Section 1983

claims that turn not on the wrongfulness of being escorted out of the stadium but the

unlawfulness of his arrest and subsequent prosecution.

Officer Delgado is potentially liable as a state actor under Section 1983 for any

constitutional violations that arose from his exercise of his state power in arresting,

detaining, and aiding in the prosecution of Jeffrey Swiecicki. However, because Officer

Delgado was acting in his private capacity when he began escorting Jeffrey Swiecicki out

of the stadium, the Officer will not be liable for any potential constitutional violations that

may have occurred before he asserted his official state power by beginning to place

Jeffrey Swiecicki under arrest.

**C. Qualified Immunity**

Officer Delgado claims he is entitled to qualified immunity for all of Jeffrey

Swiecicki's Section 1983 claims because he reasonably believed there was probable

cause to arrest Jeffrey Swiecicki for aggravated disorderly and resisting arrest. On the

15

other hand, Jeffrey Swiecicki claims that Officer Delgado was unreasonable in determining that there was probable cause for his arrest.

Government officials performing discretionary functions generally are granted qualified immunity, which shields them from liability for civil damages as long as their conduct does not violate clearly established statutory and constitutional rights of which a reasonable person would have known.  Wilson v. Layne, 526 U.S. 603, 614 (1999).  Qualified immunity is an entitlement not to stand trial, not a defense from liability.  Saucier v. Katz, 533 U.S. 194, 200 (2001).  Whether qualified immunity applies is a question of law for the court to consider.  Siggers-El v. Barlow, 2005 FED App. 0279P, at *9 (6th Cir. June 24, 2005).

The Supreme Court has routinely stressed that a ruling on qualified immunity should be made early in the proceedings so that the cost and expenses of a trial are avoided when the defense is dispositive.  Saucier, 533 U.S. at 200-201.  When the issue of qualified immunity is raised, a court must first ask, "Taken in the light most favorable to the party asserting the inquiry, do the facts alleged show the officer's conduct violated a constitutional right?"  Id. at 201.  If a violation could be found, the next step is to ask whether the right was clearly established in the specific context of the case.  Id.  The relevant inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation.  Id. at 202.  The qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law."  Hunter v. Bryant, 502 U.S. 224, 229 (1991) (quoting Malley v. Briggs, 475 U.S. 335, 343 and 341 (1986)).

16

Without this accommodation for reasonable error, officials would always err on the side of caution out of fear of being sued.  Id.

Jeffrey Swiecicki alleges three constitutional violations in his remaining causes of action: 1) violation of his freedom of speech (count one), 2) violation of his freedom from seizure of person, arrest, and imprisonment without probable cause (count two), and 3) violation of his freedom from malicious prosecution (count four).

**1.  Freedom of Speech**

Jeffrey Swiecicki argues that Officer Delgado impermissibly arrested him for the content of his speech in violation of his First Amendment rights.  Specifically, he alleges that Officer Delgado arrested him for saying, "Branyan, you suck.  Branyan, you have a fat ass," and for continually asking what he had done wrong when the Officer began escorting him out of the stadium.

First, this Court must determine whether Jeffrey Swiecicki has alleged facts sufficient to establish the violation of a constitutional right.  The Sixth Circuit Court of Appeals has held that protected speech cannot serve as the basis for a violation of municipal ordinances.  Sandul v. Larion, 119 F. 3d 1250, 1256 (1997).  The First Amendment protects a significant amount of verbal criticism and challenges directed at police officers.  Houston v. Hill, 482 U.S. 451, 461 (1987).  The only type of language that is denied First Amendment protection is "fighting words" which "by their very utterance inflict injury or tend to incite an immediate breach of the peace."  Sandul, 119 F. 3d at 1255.

If Officer Delgado arrested Jeffrey Swiecicki even partially because of the content

17

of his speech, then Officer Delgado would have violated Jeffrey Swiecicki's constitutional right to freedom of speech.  McCurdy v. Montgomery County, 240 F. 3d 512, 520 (6th Cir. 2001).  Since Jeffrey Swiecicki has alleged that Officer Delgado arrested him at least in part because of the content of his heckling and his repeated questions about why he was being asked to leave the stadium, he has alleged sufficient facts to implicate the violation of his constitutional right to freedom of speech.

Next, this Court must determine whether Jeffrey Swiecicki's right to freedom of speech was clearly established such that a reasonable officer would have known that his conduct was unlawful in this particular situation.  Ohio Courts have recognized that a violation of O.R.C. § 2917.11(B)(1), which is identical to Cleveland Cod. Ord. § 605.03(B)(1), does not necessarily depend upon the particular context of the speech involved.  Ohio v. Semler, 90 Ohio App. 3d 369, 371 (2nd Dist. 1993).[9]  Rather, a violation can be based upon the defendant's actions if he is creating enough noise and commotion to cause annoyance and alarm regardless of the content of his speech.  Id. at 372.

At the criminal trial, Officer Delgado testified that he saw a ten-year-old girl with an older man who appeared to be disturbed by Jeffrey Swiecicki's behavior and who subsequently thanked the Officer when he motioned to Jeffrey Swiecicki to cut it out.  Under these circumstances, a reasonable officer could have believed that Jeffrey

---

[9] According to Cleveland Cod. Ord. § 605.03(B)(1), Disorderly Conduct; Intoxication,

(B)  No person, while voluntarily intoxicated shall...

(1) In a public place or in the presence of two or more persons, engage in conduct likely to be offensive or to cause inconvenience, annoyance or alarm to persons of ordinary sensibilities, which conduct the offender, if he were not intoxicated, should know is likely to have such effect on others...

Swiecicki was, in public, engaged in conduct – not simply speech – likely to be offensive or to cause inconvenience to others in violation of Cleveland Cod. Ord. § 605.03(B)(1).  In other words, a reasonable officer could have believed that he or she had probable cause to arrest Jeffrey Swiecicki for aggravated disorderly conduct based upon the loudness and disruptiveness of his heckling and the apparent discomfort of fellow patrons.  Under these circumstances, it would not have been clear to a reasonable officer that he or she was violating Jeffrey Swiecicki's First Amendment rights because there was evidence that the manner, not the content, of his speech violated Cleveland Cod. Ord. § 605.03(B)(1).  Ultimately, Officer Delgado's arrest of Jeffrey Swiecicki for disorderly conduct was not plainly incompetent, nor is it shown he knowingly violated the law.

Moreover, Officer Delgado testified that he did not charge Jeffrey Swiecicki with resisting arrest for the reason that Jeffrey Swiecicki constantly questioned being arrested.  Rather, Officer Delgado claimed that he charged Jeffrey Swiecicki with resisting arrest because Jeffrey Swiecicki physically jerked his arm away out of the Officer's hold.  According to Cleveland Cod. Ord. Section 615.08, which defines the crime of resisting arrest, "No person, recklessly or by force, shall resist or interfere with a lawful arrest of himself or another."  A reasonable officer could have believed that Jeffrey Swiecicki's action of jerking his arm out of Officer Delgado's hold constituted a resistance or interference requisite for a charge of resisting arrest.  Therefore, a reasonable officer would not have thought that he or she was violating Jeffrey Swiecicki's constitutional right to free speech because there were grounds for the resisting arrest charge that involved physical action and had nothing to do with the content of Jeffrey's Sweicicki's speech.  As

19

a result, Officer Delgado will be granted qualified immunity on Jeffrey Swiecicki's First Amendment claim (count one).

**2. Freedom from Seizure, Arrest, and Imprisonment Without Probable Cause**

Jeffrey Swiecicki also argues that Officer Delgado violated his right to be free from seizure, arrest, and imprisonment without probable cause.  First, he alleges that Officer Delgado did not have probable cause to arrest him for disorderly conduct because there was no evidence to believe that he was intoxicated and the only evidence of him offending others relates to the content of his speech, which is protected by the First Amendment. Second, he alleges that Officer Delgado did not have probable cause to arrest him for resisting arrest because the prerequisite for such a charge is a lawful arrest.

Again, this Court must first determine whether Jeffrey Swiecicki has adequately alleged a constitutional violation.  To satisfy a citizen's Fourth Amendment right against unreasonable searches and seizures, police officers must have probable cause to support a full-fledged arrest.  McCurdy v. Montgomery County, 240 F. 3d 512, 517 (6th Cir. 2001). "Probable cause justifying an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."  Estate of Dietrich v. Burrows, 167 F. 3d 1007, 1010-1011 (6th Cir. 1999).  Probable cause also requires that officers articulate concrete and objective facts from which they infer criminal conduct.  McCurdy, 240 F. 3d at 517. Protected speech, however, cannot serve as the basis for a violation of any municipal

20

ordinance and cannot be relied on for probable cause.  Sandul, 119 F. 3d at 1257.

If Officer Delgado did not have probable cause to arrest Jeffrey Swiecicki for aggravated disorderly conduct or resisting arrest, then he would clearly be violating Jeffrey Swiecicki's Fourth Amendment right against illegal searches and seizures.  Ultimately, Jeffrey Swiecicki has sufficiently alleged a constitutional violation to get past the first element of the qualified immunity test.

Next, this Court must consider whether a reasonable officer in the same situation would have known that there was no probable cause for Jeffrey Swiecicki's arrest, and that it was, therefore, unconstitutional.  "Officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause or exigent circumstances, for example, and in those situations courts will not hold that they have violated the Constitution."  Saucier, 533 U.S. at 206.

First, Jeffrey Swiecicki argues that Officer Delgado did not have sufficient evidence that he was intoxicated in order to arrest him lawfully for aggravated disorderly conduct.  In contrast, Officer Delgado was presented with evidence that Jeffrey Swiecicki was intoxicated.  He had seen Jeffrey Swiecicki and others in his group bringing beers back to their seats, and Jeffrey Swiecicki himself admitted that he drank two full beers during the game.  While the Ohio Court of Appeals may have found that the prosecution had presented insufficient proof of intoxication to support a conviction, a reasonable police officer could have believed that there was enough probable cause of intoxication to arrest Jeffrey Swiecicki for aggravated disorderly conduct.  In addition, for the reasons stated in the previous section, a reasonable police officer could also have believed that there was

21

probable cause based on Jeffrey Swiecicki's loud and rowdy manner to support an arrest for aggravated disorderly conduct. Finally, a reasonable officer could have found that Jeffrey Swiecicki's failure to stop heckling after Officer Delgado signaled to him to "cut it out" constituted probable cause for the aggravation of the charge.

Jeffrey Swiecicki further argues that Officer Delgado had no probable cause to arrest him for resisting arrest since his first arrest was unlawful. However, since a reasonable officer could have believed that Jeffrey Swiecicki's arrest for aggravated disorderly conduct was constitutional, a reasonable officer could also believe that his arrest for resisting arrest was lawful. Whether or not Jeffrey Swiecicki intended to jerk his arm away from Officer Delgado's grasp, a reasonable officer could interpret that movement as an attempt to resist arrest. Accordingly, Officer Delgado will be granted qualified immunity on Jeffrey Swiecicki's false arrest and imprisonment claim (count one).

### 3. Freedom from Malicious Prosecution Without Probable Cause

Plaintiffs also urge this Court to find that Officer Delgado violated their right to be free from malicious prosecution. Following the elements necessary to establish a malicious prosecution claim, as laid out in Trussell v. General Motors Corp., 53 Ohio St. 3d 142, 145 (1990), the Swiecickis insist that Officer Delgado lacked probable cause for instituting the lawsuit and harbored malice in initiating the proceedings.

Neither allegation bears the weight of scrutiny. First, as this Court has indicated in its analysis of the Plaintiffs' false arrest and imprisonment claim, a reasonable officer in Defendant Delgado's position could have believed there existed enough probable cause of intoxication to detain Jeffrey Swiecicki for aggravated disorderly conduct. See Saucier,

22

533 U.S. at 206.  Second, whether Officer Delgado possessed the malice necessary for the Plaintiffs' malicious prosecution claim is a question of state law which, pursuant to long-standing precedent, will not support a finding of malice where the court has determined that an officer acted upon a reasonable belief that probable cause existed for the prosecution.  See Neff v. Palmer, 78 Ohio Law Abs. 34, 53, 54 (1956) (noting "[i]f the defendant entertained an honest belief that plaintiff had committed a violation of the law in acting on that belief, caused the prosecution to be instituted from a desire to bring a supposed public offender to justice, then he is not liable in action for malicious prosecution").  Accordingly, this Court will grant Officer Delgado's motion for summary judgment with regard to Plaintiff's malicious prosecution claim (count four).

**D.  State Claims**

Given that all of the federal claims in this action will be dismissed through summary judgment, this Court will no longer have supplemental jurisdiction to hear the Plaintiffs' state claims in count five of their complaint.  See 28 U.S.C. §1367(c)(3).  As a result, this court will dismiss without prejudice count five.  However, Ohio law does provide relief for Jeffrey Swiecicki and Scott Swiecicki by permitting a refiling of the action as to their state claims within one year from dismissal.  Therefore, this dismissal does not operate to prevent refiling of the state claims.[10]

---

[10] The Plaintiffs' fifth count, which contains multiple state causes of action, may be saved for refiling by O.R.C. § 2305.19.

## IV.  CONCLUSION

For the reasons set forth above, defendant Officer Delgado's motion for summary judgment is granted as to counts one, two, three, and four against both plaintiffs Jeffrey Swiecicki and Scott Swiecicki, and those counts are dismissed with prejudice.  As this court lacks jurisdiction to hear the remaining count of the Plaintiffs' complaint (count five), this action shall be remanded to state court for further proceedings.


IT IS SO ORDERED.


/s/Lesley Wells_____
UNITED STATES DISTRICT JUDGE


Dated:  13 July 2005